

Entered on Docket
August 01, 2008

_____
Hon. Bruce A. Markell
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re:<br>HECTOR J. MARTINEZ<br>and TIFFANY T. MARTINEZ,<br><br>Debtors. | Case No.: BK-S-07-15189-BAM<br><br>Chapter 13<br><br>Date:  April 22, 2008<br>Time:  2:30 p.m. |

**OPINION SANCTIONING THE COOPER CASTLE LAW FIRM,
ONE OF ITS LAWYERS, AND WELLS FARGO BANK**

**I.  Facts**

The facts leading up to this opinion are simple. A husband and wife filed chapter 13 bankruptcy owning three houses. They planned to surrender two and live in one. Each house had multiple loans against it. Wells Fargo had liens securing loans on several of the houses, including a lien on the house debtors intended to keep.

In this district, the two chapter 13 trustees hold weekly preconfirmation meetings the morning before the afternoon chapter 13 plan confirmation hearings and claims objections. In any particular week, there are rarely fewer than a hundred chapter 13 cases scheduled for confirmation; on occasion, there have been more than 250. On any given day, it is not unusual to find many, if not most, of Las Vegas's chapter 13 practitioners at these preconfirmation meetings. As a result, these meetings are apparently not unlike a bazaar, with all the attendant bargaining and confusion.

On February 28, 2008, at one of these chapter 13 preconfirmation meetings, a lawyer[1] from the Cooper Castle Law Firm, LLC (Cooper Castle) representing Wells Fargo Bank (Wells Fargo), presented George Haines (Haines), counsel for the debtors, with a stipulation lifting the automatic stay on one of the debtors' properties. Haines signed it. The lawyer from Cooper Castle then promptly submitted it to this court for an order on the stipulation. The requested order was entered on February 29.

Both the lawyer from Cooper Castle and Haines thought at the time that the stipulation related to a property the debtors intended to surrender. Both were mistaken. The stipulation contained the legal description of the home that debtors intended to keep. In the buzz of the bazaar, both lawyers failed to match up the documents with their clients' intent.

When the mistake was pointed out to the lawyer from Cooper Castle, he ultimately acknowledged it. When asked to sign a stipulation vacating the order on the mistaken stipulation, the lawyer refused. He claimed that his client, Wells Fargo, would not consent to vacating the mistaken stipulation. As a result, on March 17, the debtors sought an order shortening time for the court to hear a motion to vacate the stipulation. The reason shortened time was requested was simple: if Wells Fargo would not consent to vacating the mistaken stipulation, then Wells Fargo presumably intended to take advantage of the mistake and foreclose on the debtors residence. The court agreed to hear the motion on March 24.

Cooper Castle did not oppose the debtors' request for a hearing on shortened time. Despite

---

[1] This lawyer will not be named in this opinion. He is not a partner in Cooper Castle, but he did appear in court and carried out the client's and his superior's instructions. Under the rules, as explained in Part VI, he is equally responsible for what he did and equally sanctionable for that conduct. But the court is aware that in the real world, a junior associate cannot tell a senior partner that he refuses to do what he has been instructed to do because doing so would violate the applicable Rules of Professional Conduct. At best, the senior partner would respond, "I'll be the judge of what violates the Rules of Professional Conduct; go and do what I say." At worst, the junior lawyer will be looking for new employment. As explained in Part VII, given the difference in incentive and motivation, the court will only issue a private reprimand to this attorney, and he will not be referred to by name in this published opinion.

2

being ordered to file a written response, it did not do so. A lawyer from Cooper Castle did, however, appear at the hearing. His appearance consisted primarily of his statement that his client, Wells Fargo, would not allow him to consent to vacate the stipulation.

After hearing the evidence, the court vacated the order on the stipulation. It then issued an order to show cause why the lawyer from Cooper Castle, the Cooper Castle law firm, and Wells Fargo should not be sanctioned for their individual and collective conduct in refusing to aid the debtors in rectifying the admitted mistake.

The court held a hearing on its order to show cause on April 22. Haines and a lawyer from Cooper Castle testified, as did Cindy Shanabrook, a bankruptcy-litigation specialist from Wells Fargo. Shanabrook had no direct responsibility for the Martinez's bankruptcy case, but she did testify about Wells Fargo's internal practices. In the course of her testimony, she confirmed that Wells Fargo, through an intermediary law firm, had directed Cooper Castle not to sign the stipulation because they would normally "request a motion to be filed with the court to reconsider. . . . in order to make sure that the docket clearly reflects the standing of the case." Transcript of April 22, 2008, p. 18, *ll*.16-20. This, she stated, would reduce "confusion." On further questioning, however, she stated that a motion would not be necessary in some situations. These included using stipulations when the original agreement contained an erroneous legal description or when the parties had agreed to settle and discount amounts in dispute in a proof of claim. At the end of the hearing, the court took the matter under submission.

The court's original order to show cause required Cooper Castle, the lawyer from Cooper Castle, and Wells Fargo to justify their actions under, among other things, NEV. ST. RPC 1.2 (Scope of Representation and Allocation of Authority Between Client and Lawyer),[2] FED. R. BANKR. P.

---

[2] Attorneys practicing before this court are required to adhere to the Local Rules of this court as well as to the Model Rules of Professional Conduct as may be amended and adopted by the Nevada Supreme Court. Local Rule IA 10-7. This rule, however, is subject to such modifications as the court may make. *Id*. As a result, and as permitted by Local Rule IA 10-7, the court will consider other relevant authorities, such as the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, the actual

3

9011 ("Rule 9011"), and this court's inherent power to regulate the practice of law before it.

## II.  The Legal Status of the Stipulation and Order

Central to this matter is the validity of the mistaken stipulation.  In this circuit, a stipulation is reviewed as a contract.  Brawders v. County of Ventura (*In re* Brawders), 503 F.3d 856, 863 (9th Cir. 2007) (citing Jeff D. v. Andrus, 899 F.2d 753 (9th Cir. 1989)).  As a contract, however, the stipulation in this case was never enforceable as written.  Haines and the lawyer from Cooper Castle both thought that they were signing a stipulation as to a property not described in the stipulation; that is, they each signed the stipulation thinking that it was for Property A when it was instead for Property B.  There was thus a mistake in the expression of the purpose of the contract, and that mistake went to a basic assumption of the contract.

One need not be a student of the law of mistake to know that any contract formed under such circumstances can be reformed by either party, or if not reformed, avoided.  *See, e.g.*, Realty Holdings, Inc. v. Nevada Equities, Inc., 97 Nev. 418, 419-20, 633 P.2d 1222, 1223 (1981); RESTATEMENT (SECOND) OF CONTRACTS § 155 cmt. b (1981) ("A mistake as to expression is a mistake as to a basic assumption . . . ."); *see also* United States v. Williams, 198 F.3d 988 (7th Cir. 1998) ("Voidance is the proper remedy '[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances.'") (quoting RESTATEMENT (SECOND) OF CONTRACTS § 152(1) (1981)); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 12 (Tentative Draft No. 1, 2001); 7 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 28.45 (Joseph M. Perillo ed., rev. ed. 1993 & Supp. 2008) .

Add to this the undeniable legal proposition that any mutual mistake sufficient to reform or avoid a stipulation is also a sufficient mistake to reform or set aside an order entered on that

---

Model Rules and their related commentaries.  *See also* Nancy Rapoport, *The Intractable Problem of Bankruptcy Ethics: Square Peg, Round Hole*, 30 HOFSTRA L. REV. 977 (2002);  Nancy Rapoport, *Our House, Our Rules: the Need for a Uniform Code of Bankruptcy Ethics*, 6 AM. BANKR. INST. L. REV. 45 (1998).

4

stipulation under FED. R. BANKR. P. 9024 (incorporating FED. R. CIV. P. 60(b)). Whitaker v. Associated Credit Servs., Inc., 946 F.2d 1222, 1224-25 (6th Cir.1991) (court set aside judgment entered on mistaken offer of judgment; evidence beyond dispute that offer of $500,000 was mistaken and intended to be $500); 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY K. KANE, FEDERAL PRACTICE & PROCEDURE: JURISDICTION AND RELATED MATTERS § 2858, at p. 274 (2d ed. 1995) ("[S]imilarly, judgments entered as a result of settlements may be reopened when fraud or mutual mistake is shown.")

The vulnerability of the stipulation is unquestionable especially when, as here, all agree that the mistake occurred.[3] Without a valid contract to support it, no one could reasonably contest Haines's ability to reform or set aside the order on the stipulation. This court is thus concerned with the decision by Cooper Castle and Wells Fargo to force the debtor to the time and expense of a hearing on shortened time to correct something they knew, or should have known, was invalid and unsupportable.

The legal status of the stipulation as indisputably avoidable correlates with another, more critical, set of inquiries. Was the refusal to consent to the correction of the stipulation undertaken for an improper purpose such as the needless increase in the cost of litigation? Did it embody and advocate a position that was not warranted by any reasonable interpretation of current law? These questions, and others explored below, raise the issue of the propriety of sanctions.

### III. Violations of Rule 9011

Rule 9011 regulates an attorney's representations to the bankruptcy court. Of particular import to this case, Rule 9011 holds that:

> (b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or

---

[3]Even if Wells Fargo had instructed its counsel not to admit the mistake, there is clear and convincing evidence of mutual mistake. Given the technicalities of the legal descriptions, and the hurly-burly of the preconfirmation meetings, the mistake was not unreasonable, although reformation to correct the mistake would still be available under Nevada law even if the parties were negligent. *Realty Holdings*, 97 Nev. at 420 & n.1, 633 P.2d at 1223-24 & n.1.

> unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
> (1) it is not being presented for any improper purpose, such as to harass, or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law . . . .

FED. R. BANKR. P. 9011 (adopting FED. R. CIV. P. 11). This rule "provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1177 (9th Cir. 1996) (citing Warren v. Guelker, 29 F.3d 1386, 1388 (9th Cir. 1994)). *See also* Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1415-16 (9th Cir. 1990) (citing Greenberg v. Sala, 822 F.2d 882, 885 (9th Cir. 1987)). As the Bankruptcy Appellate Panel recently stated, "In considering sanctions under Rule 9011, the court measures the attorney's conduct 'objectively against a reasonableness standard, which consists of a competent attorney admitted to practice before the involved court.'" Smyth v. City of Oakland (*In re* Brooks-Hamilton), 329 B.R. 270, 283 (B.A.P. 9th Cir. 2005) (quoting Valley Nat'l Bank v. Needler *(In re* Grantham Bros.), 922 F.2d 1438, 1441 (9th Cir. 1991)).

Although neither Wells Fargo nor its counsel filed any pleading opposing setting aside the order on the mistaken stipulation, that is not fatal to finding a violation of Rule 9011. Cooper Castle and its lawyer's opposition to the motion to vacate at the hearing on shortened time is sufficient. By opposing, each "later advocat[ed]" the propriety of the mistaken stipulation. Even though no filing was made, the appearance and opposition to the debtor's motion essentially vouched for and advocated the validity of the mistaken stipulation and order. As this court has previously held, this "later advocating" of a position in a document is "conduct [that] runs afoul of Rule 9011. It is the *presentation* of a claim or contention, whether by signing it or later advocating it, that triggers Rule 9011. . . . Under the terms of Rule 9011, presentation occurs 'by signing, filing, submitting, or *later advocating* [ ] a petition' . . . ." Bankr. R. 9011(b)(1) (emphasis added)."

*In re* Aston-Nevada Ltd. P'ship, 2006 WL 5866636, *12 (Bankr. D. Nev., Jan. 25, 2006).

When Cooper Castle and its lawyers learned of the lack of a basis to oppose the debtors' motion, they should have declined to oppose it.[4] Instead, they each took the passive approach to client representation, seemingly doing whatever the client requested, regardless of whether it was reasonable or justified by the facts. A lawyer may not do this. Rule 3.1 of Nevada's Rules of Professional Conduct states:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. . . .[5]

This rule requires a lawyer to exercise independent judgment with respect to claims a client wishes to bring and to decline to pursue claims that are frivolous. As indicated in a leading treatise:

> [A] lawyer's duty to refrain from making frivolous contentions will result in conflict with the client if the client insists that the contentions nevertheless be made. When such conflicts arise, Model Rule 3.1 and practice rules such as Rule 11 of the Federal Rules of Civil Procedure dictate that the interests of the fair administration of justice must be given priority over the client's desires.

2 GEOFFREY C. HAZARD, JR., W. WILLIAM HODES & PETER R. JARVIS, THE LAW OF LAWYERING § 27.13, at p. 27-27 (3d ed. 2008) (hereinafter, "Hazard, Hodes & Jarvis"). As a result, when Cooper Castle and its lawyers learned of the mistake in the stipulation, each of them should have taken steps to reform the stipulation so that it provided what the parties intended. At a very minimum, Cooper Castle and its lawyers should have declined to follow their client's instruction to oppose the

---

[4] Further complicating this state of affairs is the fact that Cooper Castle and its lawyers violated this court's order that they file a response on Wells Fargo's behalf. The lawyer from Cooper Castle claims not to have seen the language on the order requiring him to file a response, but the court does not credit that statement; he is too diligent a lawyer – under normal circumstances – to have missed such an important addition. And if he didn't see the language, he should have.

[5] Rule 3.1 of the American Bar Association's Model Rules of Professional Conduct is identical. The RESTATEMENT OF THE LAW GOVERNING LAWYERS is similar: "A lawyer may not bring or defend a proceeding or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good-faith argument for an extension, modification, or reversal of existing law." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 110(1) (2000).

7

debtors' motion; nothing except unfair advantage was to be gained by such opposition. Again, to quote Hazard, Hodes & Jarvis:

> If the lawyer carries out the client's instruction after becoming aware of the frivolous nature of the contentions, both the lawyer and the client can be civilly liable for sanctions under FRCP Rule 11, as well as subject to the exercise of the court's inherent supervisory powers.

*Id.* As this court has previously stated:

> To act on such frivolous claims, then, without independent investigation, was to succumb to the so-called "butler-style" of representation, under which the sequaciously servile lawyer does whatever the client wants and then cites that client's command as a shield to the improper actions. This style of lawyering, however, has no place in bankruptcy court or, for that matter, in any court.

*Aston-Nevada*, 2006 WL 5866636 at *11.

      Here, as set forth above, a competent attorney would have known that the debtors could have reformed the stipulation or set it aside. Indeed, by admitting that there was a mistake in expression, the lawyer from Cooper Castle acknowledged the frivolousness of any position that sought to block or impede correcting the mistake – unless he sought to profit by the mistake, a clearly improper purpose and independent grounds for Rule 11 sanctions.

      Cooper Castle and Wells Fargo argue that a hearing was required because the debtors had objected to their claim. This argument is both legally irrelevant and factually flawed. First, parties to litigation may not file meritless motions just because the other side is objecting to their claim; that is a bedrock principle of Rule 11, and no case has been cited that provides an exception to this rule or that justifies Cooper Castle's actions or the actions of its lawyers. Second, on the same day that the mistaken stipulation was signed, the debtors took their objection to Wells Fargo's claims off calendar; Wells Fargo and its lawyers didn't know this because they didn't bother to attend the hearing and never followed up with a request for a recording of the hearing. Finally, although a hardball litigation stance might be defensible (although lamentable) if there were any legal basis for the validity of the stipulation, by March 17 that basis had completely eroded. The mistake was known and admitted by all. Requiring the debtors' lawyers to schedule and appear at a motion on

shortened time was an exercise in preventable waste and needless litigation.

As a result, the lawyer from Cooper Castle, Cooper Castle, and Wells Fargo each violated Rule 9011 by later advocating the propriety of the mistaken stipulation when they knew, or should have known, that the continued assertion of the validity of the stipulation, and the order entered on it, was not "warranted by existing law." FED. R. BANKR. P. 9011(b)(2). Further, by requiring the debtors to file a motion on shortened time, and to obtain a hearing on a matter that could have and should have been resolved by a simple stipulation reforming the original stipulation (or vacating it), they interposed their opposition for an "improper purpose, such as to . . . delay or needless[ly] increase the cost of litigation." FED. R. BANKR. P. 9011(b)(1).

## IV. Violations of the Nevada Rules of Professional Conduct

Cooper Castle and its lawyer separately defend on the basis that they were each simply following client's orders. They contend that it would put an unwarranted and unnecessary barrier between them and their client were this court to rule that they had an obligation to say "no" to their client. This position calls into question the proper role of lawyers and their clients before this court.

The relationship between lawyers and clients is governed by NEV. ST. RPC 1.2 and explained in Section 23 of the *Restatement (Third) of Law Relating to Lawyers.* Rule 1.2(a) of Nevada's Rules of Professional Conduct states, in part, "a lawyer shall abide by a client's decision concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued." Comment 13 to this rule, as promulgated by the American Bar Association, states that

> If a lawyer comes to know or reasonably should know that a client expects assistance not permitted by the Rules of Professional Conduct or other law or if the lawyer intends to act contrary to the client's instructions, the lawyer must consult with the client regarding the limitations on the lawyer's conduct. See Rule 1.4(a)(5).

AM. BAR ASS'N, ANNOTATED MODEL RULES OF PROFESSIONAL RESPONSIBILITY, 2.1, cmt. 13 (2002).[6]

> This consultation is important; under the *Restatement of Law Governing Lawyers*,
>
> As between client and lawyer, a lawyer retains authority that may not be overridden by a contract with or an instruction from the client:
> (1) to refuse to perform, counsel, or assist future or ongoing acts in the representation that the lawyer reasonably believes to be unlawful . . . .

RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 23 (2000). The comments to this section confirm that "Unlawful acts include all those exposing a lawyer to civil or criminal liability, including procedural sanctions, or discipline for violation of professional rules." *Id..,* cmt. c.[7] *See also* HAZARD, HODES & JARVIS, *supra*, at § 5.5, at p. 5-15 to 5-16.

As a result, the attempted refuge to client instructions is unavailing. Clients may not demand unethical or unlawful conduct from their lawyers and expect compliance. As established above, Cooper Castle and its lawyers knew, or should have known, that Wells Fargo had no reasonable or nonfrivolous basis to oppose setting aside the stipulation. At a minimum, they had a duty to tell this to Wells Fargo, NEV. RPC 1.4(a)(5), and to withdraw from the representation or take some other action if Wells Fargo insisted on opposing. *Id.* 1.16(a)(1) ("a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: [¶] (1) The representation will result in violation of the Rules of Professional Conduct or other law"). They neither withdrew nor did they offer any evidence of compliance with Rule 1.4.

The court understands that lawyers do not give away their services, and that good business

---

[6]The Nevada Supreme Court has indicated that "[t]he preamble and comments to the ABA Model Rules of Professional Conduct . . . may be consulted for guidance in interpreting and applying the Nevada Rules of Professional Conduct . . . ." NEV. RPC 1.0A.

[7]The same result is reached under the general agency law; a principal may not compel his or her agent to engage in unlawful activity. RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 23, cmt. c (2000). *See also* RESTATEMENT (THIRD) OF AGENCY § 8.09, cmt. c (2006).

10

and good lawyering each require that the lawyer serve the client's business needs.  But law is a profession as well as a business.  Because of this status, lawyers must not allow the interests or dictates of a client to control their  professional judgment.  *See In re* Rivera, 342 B.R. 435, 468 (Bankr. D.N.J. 2006) ("Lawyers must maintain their independence – and resist, at the risk of losing a client or their employment, pressures which would undercut their professionalism.")   As the Fifth Circuit recently noted, "This is no matter of rules of fine etiquette.  Rather, it is the matter of lawyers as officers of the court conducting themselves in ways that do not impede the work of the courts – the genuine and not false service to their clients. " Newby v. Enron Corp., 302 F.3d 295, 303 (5th Cir. 2002).  *See also* Thomas v. City of North Las Vegas, 122 Nev. 82, 96, 127 P.3d 1057, 1067 (2006) (stating: "Zealous advocacy is the cornerstone of good lawyering and the bedrock of a just legal system.  However, zeal cannot give way to unprofessionalism, [or] noncompliance with court rules").

This court is concerned that Cooper Castle and its lawyers sacrificed their professional independence to the demands of a large institutional client.  They should have counseled Wells Fargo to agree to vacate the mistaken stipulation, and informed them that any other course of conduct was unreasonable and one in which they could not participate.  Instead, they followed Wells Fargo's instructions without apparent regard to their professional obligations.  In short, rather than remain as independent professionals counseling Wells Fargo, Cooper Castle and its lawyers instead chose to become unthinking agents for Wells Fargo's ends.

The smooth functioning of the courts and the interests of justice always trump a client's unreasonable demands.  *See In re* Castorena, 270 B.R. 504, 526-32 (Bankr. D. Idaho 2001) (recognizing the economic pressures on lawyers but nonetheless requiring adherence to court rules and rules of professional conduct).   A lawyer representing a client whose business contributes to a lawyer's income necessarily faces a difficult question every day: Will the lawyer remain an independent professional or instead become a fancy butler serving the needs of a more powerful principal?  *See* Rob Atkinson, *How the Butler Was Made To Do It: The Perverted Professionalism*

11

*Of The Remains Of The Day*, 105 YALE L.J. 177, 184 (1995). This court cannot force a party to undertake such introspection; however, to the extent the questions posed by such introspection are answered by the law governing lawyers, the court can compel compliance. As a result, the court finds that Cooper Castle and the lawyer appearing from that firm each violated their duties under Rules 1.2, 1.4 and 1.16.

**V. Actions Subject to This Court's Inherent Power to Regulate Practice Before It**

In addition, sanctions are supported by this court's inherent authority to regulate practice before it. Miller v. Cardinale (*In re* DeVille), 361 F.3d 539 (9th Cir. 2004); Knupfer v. Lindblade (*In re* Dyer), 322 F.3d 1178, 1192-96 (9th Cir. 2003) . *See also* 11 U.S.C. § 105. The Ninth Circuit has stated that it is:

> clear that sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith. Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose. Therefore, we hold that an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power.

Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001). [8]

Civil, expeditious litigation is a cornerstone of a well functioning bankruptcy court. Thousands of debtors pass through this court each year. Within each chapter 13 case, there may be many issues and attorneys, each working to preserve the interests of their respective clients. While the court recognizes, and indeed encourages, zealous advocacy, the rules under which this and every other federal court operate require that parties behave civilly and act expeditiously. To this

---

[8] This inherent power to punish, however, differs from the power to sanction under Rule 9011. Only actions taken in bad faith may be punished under the court's inherent power. *DeVille*, 361 F.3d at 548; Fjeldsted v. Lien (*In re* Fjeldsted), 293 B.R. 12, 26 (B.A.P. 9th Cir. 2003). *See also* Barber v. Miller, 146 F.3d 707, 711 (9th Cir. 1998) ( "An award of sanctions under . . . the district court's inherent authority requires a finding of recklessness or bad faith."). By contrast, the imposition of sanctions under Rule 9011 requires only a showing of "objectively unreasonable conduct." *DeVille*, 361 F.3d at 548 (quoting Fellheimer, Eichen & Braverman v. Charter Technologies, 57 F.3d 1215 (3d Cir. 1995)).

12

end, the court finds that the entirety of Cooper Castle, its lawyers, and Wells Fargo's behavior fell short of the level of practice that this court expects and the law demands.

While the focus of this court's opinion has been on the conduct of both Cooper Castle and its lawyers, Wells Fargo was a central figure in this matter. Indeed, it was named specifically in the court's order to show cause. The court's inherent authority to sanction extends to "parties who act in 'bad faith, vexatiously, wantonly, or for oppressive reasons.'" Marek v. Chesney, 473 U.S. 1, 36-37 (1985) (quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975)). Wells Fargo's actions fit within the terms set forth in *Alyeska Pipeline* and reaffirmed in *DeVille*, *Fink*, and *Dyer*.

Wells Fargo's instructions were the sole reason that Cooper Castle and its lawyers denied the debtors' request for an ameliorative stipulation. In defense of its action, Wells Fargo introduced the testimony of Cindy Shanabrook,[9] a Wells Fargo bankruptcy-litigation specialist. Shanabrook testified that in certain circumstances, including those involved here, Wells Fargo preferred that a motion be filed, rather than a stipulation and order be entered, because she believed that this would prevent "confusion." Exactly what type of confusion this would prevent was never made clear. On examination by the court, Shanabrook drew a distinction between correcting clerical errors, such as an incorrect property description, and correcting mistakes that resulted in substantive outcomes, such as a change to the automatic stay. According to Shanabrook, Wells Fargo does not require a hearing for the former, but would for the latter.

The distinction Wells Fargo seeks to draw is without merit. The effect of an order resulting from a stipulation is the same as an order resulting from a motion. An order is an order. Moreover,

---

[9]The testimony of Shanabrook raises independent issues. By her own admission, she was not involved with this case and became aware of it only in preparation for her appearance at the hearing on the order to show cause. There was no evidence that the person or persons who had direct knowledge of this case or the policies in force at the relevant time were unavailable or unable to appear at the hearing, or that they communicated with Shanabrook. For those reasons, this court finds that Wells Fargo failed to provide a witness competent to testify to matters relevant to this proceeding, and so the court will draw an inference from this refusal that had competent testimony been produced, it would have been adverse to Wells Fargo.

13

the parties are in control of a stipulation and its wording, and can thereby infuse the stipulation with as much certainty as the other party will tolerate. As a result, Wells Fargo's internal guidelines are at best confusing, and at worst allow for harassing opposing parties.

Further, Shanabrook's testimony illustrated Wells Fargo's inconsistency in its instructions to counsel regarding whether to accept stipulations to correct a mistake. As noted above, the distinctions that Shanabrook sought to draw between various scenarios warranting acceptance or denial of a stipulation crumble because those distinctions fail to comprehend that an order's effect is independent of how that order came to be. Further, she testified that in similar or negligibly different circumstances, Wells Fargo would accept a stipulation. Her testimony shows that under the guise of promulgating objective standards, Wells Fargo instead kept its options open to act as it desired, regardless of whether it was motivated by good business judgment or caprice.

In this case, Wells Fargo exercised its option in a way that it knew would force the debtor to schedule, and the court to hear, a matter that should have been disposed of by a simple stipulation. None of the explanations put forward by Wells Fargo or its attorney hold any water; they are either factually wrong – the belief that the debtor continued its objection to Wells Fargo's claim – or confusing to the point of obdurate obfuscation – the belief that an order after a hearing is less confusing than an order on a stipulation.

The court's conclusion is that the only motive consistent with the facts is that Wells Fargo wanted to take advantage of its counsel's error, and either run up its bill against the debtor (for surely the documents between Wells Fargo and the debtors allocate all Wells Fargo's attorneys' fees to the debtors) or actually foreclose upon the debtors' residence. Such arbitrary conduct falls within the bounds of the vexatious, wanton, or oppressive conduct that is grounds for sanctions under *Alyeska*, 421 U.S. at 258-59, and under *DeVille*, *Fink* and *Dyer*. Accordingly, this court orders that Wells Fargo may not collect any fees to which it may otherwise be entitled under Section 506(b), if those fees were accrued in connection with the motion to vacate the order granting relief from the automatic stay or this court's order to show cause.

14

### VI. The Status of the Individual Lawyer From Cooper Castle

The court is particularly concerned about the effect of this opinion on the lawyer appearing from Cooper Castle. He is not a partner in the Cooper Castle firm, and presumably answers to higher-ups.[10] He also appears regularly before this court, and he is unflaggingly courteous and civil in all matters. Debtors' counsel went out of their way during argument to underscore that the lawyer from Cooper Castle had been nothing less than professional in his personal demeanor and dealings on this case; they acknowledge that he has been saddled by a client that insists on an unreasonable course of conduct. Indeed, debtors' counsel specifically requested that the Cooper Castle lawyer not be subject to this court's order to show cause.

But reputation and personal affability do not excuse his conduct in this case. A lawyer is not freed from ethical duties simply by virtue of practicing under the direction of a senior lawyer. The Nevada Rules of Professional Conduct require that a lawyer abide by the Rules of Professional Conduct "notwithstanding that the lawyer act[s] at the direction of another person." NEV. ST. RPC 5.2(a). *See also* Phil Pattee, *Practice Tips from Bar Counsel: "I Was Only Following Orders" Isn't a Preferred Defense*, NEV. LAW., Aug. 2008, at 43. This rule is further reinforced by the comment that "a junior law-firm associate working under the supervision of a senior partner is nonetheless personally responsible to know and apply relevant lawyer-code and other legal requirements in the course of the associate's work." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 12 cmt. b (2000). In addition, Rule 9011(b) violations are not determined based on whether lawyers act of their own initiative or the initiative of a senior lawyer. Thus, the junior lawyer is charged with the professional duty to know and comply with the applicable rules of professional conduct, despite being employed by and subordinate to a senior lawyer.[11]

---

[10] No evidence was presented as to any communications or dealings between this lawyer and the members of Cooper Castle, even though both were made separate respondents to this court's order to show cause.

[11] There is a safe harbor that protects an associate from liability "if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional

15

Just as Cooper Castle was duty bound to alert Wells Fargo that its proposed course of action was improper, so, too, was the lawyer from Cooper Castle duty bound to inform the attorneys in his firm that their proposed course of action was improper. This lawyer was not merely the inanimate instrument of Cooper Castle and Wells Fargo; he was and is an attorney admitted to practice before this court. As such he has duties independent of his employment contract. As set forth above, his actions in opposing the motion to vacate violated Rule 9011. As a result, the court finds that this lawyer has failed to present evidence that he did not fail in his professional duty as a lawyer. He is thus subject to sanctions for his conduct, just as Cooper Castle, his employer, is subject to sanctions for its conduct.

## VII. Sanctions

Rule 9011(b)(2) provides that sanctions "imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." The scope of inquiry on sanctions under Rule 9011, therefore, is what will deter Cooper Castle, its lawyers, and Wells Fargo from such future conduct, and what will deter other attorneys and clients from adopting a similar course of conduct.

Under Rule 11, courts have ordered a wide array of sanctions, including fines, attorneys' fees and costs, disgorgement of fees charged for the sanctionable activity, mandatory legal education, and referrals to disciplinary bodies. GEORGENE M. VAIRO, RULE 11 SANCTIONS: CASE LAW, PERSPECTIVES AND PREVENTATIVE MEASURES § 3.04[a], at 566-74 (3d ed., Richard G. Johnson, ed. 2003). *See also* AMERICAN BAR ASS'N, STANDARDS FOR IMPOSING LAWYER SANCTIONS (as amended, 1992).[12] From this list of possible sanctions, the court has taken into

---

duty." NEV. ST. RPC 5.2(b). Here, however, admission of the mistake deprived the matter of any doubt. After admitting the mistake, as has been emphasized above, following Wells Fargo's insistence on an opposition violated the rules governing professional conduct and Rule 9011.

[12]In formulating the sanctions assessed, the court has studied the American Bar Association standards as required by the Bankruptcy Appellate Panel. Price v. Lehtinen (*In re* Lehtinen), 332 B.R. 404, 415-16 (B.A.P. 9th Cir. 2005). The standards set forth four factors: 1. Whether the duty violated was to a client, the public, the legal system, or the profession; 2. Whether the lawyer acted

16

account the responses and general reputation of Cooper Castle and its lawyers, and Wells Fargo's dissembling testimony, presented through an agent with no knowledge of the transaction at issue. As this court stated in Aston-Nevada, "The notion that any action requested by a client should be taken so long as some argument, no matter how tenuous, can be made for it, is corrosive. If unchecked, it spreads in a form of 'tit-for-tat' reciprocity that lowers the level of practice, and multiplies litigation without benefitting anyone." *Aston-Nevada*, 2006 WL 5866636, at *17.

In this court's judgment, the maximum deterrence will result from publication of this opinion. As a consequence, this opinion will constitute a public reprimand of Cooper Castle in the form of a published opinion in West's Bankruptcy Reporter and other collections of bankruptcy court opinions. *See* William W. Schwarzer, *Sanctions Under the New Federal Rule 11 – A Closer Look*, 104 F.R.D. 181, 201 (1985).[13]

Although the lawyer from Cooper Castle participated fully in the sanctionable activities described above, the motives behind that assistance are obviously different from those of the law firm that employs him. He cannot be fairly tarred with the same brush that seeks to deter the blind following of client instructions that violate the governing rules of professional conduct; he may have been following instructions, but his livelihood was more directly affected. And he has been nothing but honest in disclosing the reasons for his actions in this matter.

But despite these mitigating circumstances, he is not blameless. His conduct violated the governing rules of professional conduct. Deterrence of this type of activity requires, at a minimum,

---

intentionally, knowingly, or negligently; 3. Whether the lawyer's misconduct caused a serious or potentially serious injury; and 4. Whether there are aggravating and/or mitigating factors.

Here, the duty violated ran to the legal system and the profession. As set forth in text, the court finds that the sanctionable activities were intentionally and knowingly done. The injury caused here was slight, although not negligible. As to aggravating and mitigating factors, the lawyer from Cooper Castle and Cooper Castle put forward their client's instruction; the vacuity of that defense is analyzed above.

[13]This court does not believe that fines will constitute sufficient deterrence at this point, although future similar activity might justify increasing the form and type of sanctions. *See* FED. R. BANKR. P. 9011(c)(2).

imposing some sanction, but not necessarily of the public kind. He will separately receive a private reprimand for his conduct, and will not be subject to the monetary sanctions imposed later in this opinion.

The court may address Wells Fargo's harassment imposed by its refusal to correct its lawyer's mistake through its inherent powers. Its refusal, and the concomitant ability to profit by that mistake, is bad faith conduct. *Cf*. Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648-49 (9th Cir. 1997) ("a finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent'"). In connection with this bad faith conduct, the court is concerned with the monetary effect on the debtors. If nothing is done, the debtors will have to pay their attorneys for the hearing to set aside the stipulation, and they will have to pay the costs of Wells Fargo's attorneys as well. At a minimum, deterrence in this situation requires that debtors be put in the position they would have been in had Wells Fargo acted reasonably and in accordance with law. To achieve this, this court orders that Wells Fargo must pay debtors the amount they paid their attorneys to schedule and appear at the order shortening time to set aside the stipulation.[14] It further orders that Wells Fargo may not collect any fees to which it may be entitled under Section 506(b) if those fees were accrued in connection with the motion to vacate the order granting relief from the automatic stay or this order to show cause. Debtors' counsel is to file with the court evidence of what it charged its clients within 15 days of the entry of this order, and Wells Fargo must pay that amount to debtors' counsel within 15 days after the evidence is filed with the court.

**VIII.  Conclusion**

The court finds that Cooper Castle and its lawyer who appeared in this case failed to maintain their professional independence from Wells Fargo. In particular, this court finds they each

---

[14]The court does not order Wells Fargo to pay the costs incurred in responding to the order to show cause regarding sanctions. Each side will bear the costs of that hearing, since debtors did not seek any sanctions, and indeed requested this court not to pursue the sanctions matter.

violated Rule 9011, and Rules 1.2, 1.4 and 1.16 of Nevada's Rules of Professional Conduct. Their client, Wells Fargo, who also violated Rule 9011, produced evidence that demonstrated the lack of a coherent or consistent policy regarding correcting mistakes, and when pressed to reconcile their position with other similar situations, it concocted fabricated differences, thereby acting in bad faith.

Against this background, the court finds sanctions are warranted to deter future similar conduct by these parties as well as others and to secure future compliance with standards of civil and expeditious litigation. The court, therefore, sanctions Cooper Castle with a public reprimand, and its lawyer who appeared in this matter with a private reprimand. The court sanctions Wells Fargo for its bad faith conduct in this matter by ordering it to pay debtors their attorneys' fees incurred in scheduling and appearing at the hearing to vacate the mistaken stipulation. Further, Wells Fargo may not collect from the debtors any fees (by way of direct billing or by way of adding it to the debt owed to Wells by the debtors) incurred in connection with the motion to vacate the mistaken order.

IT IS SO ORDERED.

Copies sent to:

YVETTE YLAGAN yvette@ccfirm.com

GEORGE HAINES jsanduski@hainesandkrieger.com

DAVID KRIEGER jsanduski@hainesandkrieger.com

KATHLEEN A. LEAVITT courtsecf3@las13.com, YolandaA@LAS13.com

# # #